IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN DIANE TORRES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:18-CV-2908-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, see ECF Nos. 8 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment, see 28 U.S.C. § 636(c).  Pending before the court are the parties' briefs on the merits.  See ECF Nos. 20 and 24.

        The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

> Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

|      |        |                                                                                                                                                                                                                                                                                |
|------|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
|      | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 11, 2012. See CAR 24.[1] In the application, plaintiff claims her disability began on June 10, 2011. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 26, 2013, before Administrative Law Judge (ALJ) L. Kalei Fong. Id. Plaintiff's claim was denied and she appealed the decision to the federal court, which remanded the case to the agency for rehearing. See CAR 643.

Plaintiff had a rehearing before ALJ Carol Buck on April 17, 2018. In an August 9, 2018, decision, the ALJ concluded plaintiff was not disabled until August 13, 2014, based on the following relevant findings:

    1.    Since the alleged onset date of disability, June 10, 2011, the claimant has the following severe impairment(s): lumbar degenerative disc disease, irritable bowel syndrome, and obesity;

    2.    Since the alleged onset date of disability, June 10, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments in the regulations;

    3.    Since June 10, 2011, the claimant has the residual functional capacity to perform sedentary work except she can lift 11 to 20 pounds occasionally and 10 pounds frequently. She can carry no more than 20 pounds occasionally and 10 pounds frequently but no more than 4 hours per day. She requires a cane or walker for distances of more than 1 block and can less than occasionally ambulate on uneven surfaces. She can stand/walk 1 hour at a time and a total of 4 hours in an 8-hour day. She can sit up to 6 hours in an 8-hour day in 2-hour increments. She can reach overhead bilaterally with the upper extremities and occasionally operate foot controls. She can occasionally climb ramps and stairs, stoop, and kneel. She cannot crawl or crouch. She must avoid hazards, heavy industrial vibrations, and extreme heat and cold. She requires a restroom within 200 feet of her work area and 1 extra bathroom break lasting up to 5 minutes in addition to her regular breaks;

    4.    Prior to August 13, 2014, the date the claimant's age category changed, considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on June 19, 2019. See ECF No. 13.

  5. Beginning on August 13, 2014, the date the claimant's age category changed, considering claimants age, education, work experience, residual functional capacity, vocational expert testimony, and the Medical-Vocational Guidelines, there are no jobs that exist in the national economy that claimant could perform.

  6. The claimant was not disabled prior to August 13, 2014, but became disabled on that date and has continued to be disabled through the date of this decision.

See id. at 643-656.

After the Appeals Council declined review on December 28, 2015, this appeal followed.

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ did not provide clear and convincing reasons to discredit plaintiff's testimony about the severity of her diarrhea symptoms; (2) the ALJ did not give proper weight to the testimony of plaintiff's home support aide; (3) the ALJ did not properly account for plaintiff's frequent and unscheduled bathroom breaks when assessing plaintiff's residual functional capacity; and (4) the vocational expert's testimony regarding the availability of jobs is flawed because it is predicated on a faulty residual functional capacity assessment and the ALJ failed to ask if the vocational expert's testimony was consistent with the Dictionary of Occupational Titles.[2]

  **A.** **Credibility Assessment**

At Step 4, the ALJ assessed the credibility of plaintiff's testimony regarding her diarrhea symptoms while evaluating plaintiff's residual functional capacity. See CAR 648. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding

---

[2] Plaintiff does not challenge the ALJ's evaluation of the various medical opinions of record. In this regard, the hearing decision reflects that the ALJ gave "partial weight" opinions offered by Drs. Eskander and Saphir, agency reviewing physician, "partial weight" to the opinions offered by Dr. Orillosa, the agency consultative examining physician, and "great weight" to the opinions offered by Dr. Thomson, a medical expert who testified at the second hearing. See CAR 651-53.

must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ summarized plaintiff's subjective statements and testimony as follows:

> The claimant alleged disability due to stomach pain, irritable bowel syndrome, and sacroiliac-hip joint dysfunction. She reported she had diarrhea 3 to 4 times a week and needed to be close to a bathroom. Her abdomen, back, hips, and groin hurt all the time and she needed to lie down to be comfortable. She had difficulty standing or walking in order to cook meals or walk to the bathroom. Walking caused her to feel tired and increased her pain. She estimated she could lift and carry a gallon of milk. She had difficulty shopping due to pain and had difficulty driving more than short distances due to pain and diarrhea. She did no household chores. She estimated she slept 4 hours a night and 1 hour[] in the afternoon. She used a cane and walker for balance. She spent 5 out of 7 days lying in bed due to pain. She needed assistance to dress, bathe, and shave her legs. She needed reminders for personal grooming and medications. She had in-home support services for grooming, cleaning, shopping, and other daily activities. She could not squat or bend and had difficulty reaching, kneeling, and climbing stairs. She estimated she could sit 5 to 10 minutes and walk 25 to 35 feet. She had used electric carts in stores (citations omitted).

CAR 649-50.

As to plaintiff's credibility, the ALJ stated: "These allegations are inconsistent with the clinical indications showing the claimant's impairments were adequately controlled with treatment." CAR 650. Regarding plaintiff's irritable bowel syndrome complaints, the ALJ stated:

> Although she alleges debilitating abdominal pain with frequent diarrhea, repeated imaging of the abdomen revealed only "mild nonspecific thickening of the sigmoid colon and rectum." There was no evidence of a lesion requiring surgical intervention and no evidence of any acute inflammatory process (citations omitted). Indeed, extensive workup, including colonoscopy, upper endoscopy, stool studies, blood tests, and exploratory laparoscopy, were negative for any abnormality other than "Mild" duodenitis and "minor" diverticula without evidence of inflammatory bowel disease (citations omitted). While she has complained of frequent diarrhea, the record reveals that her weight has been stable and generally ranged between 236 to 240 pounds (citations omitted).
>
> * * *

///

> Examinations of the abdomen revealed no rebound tenderness, abdominal masses, or other significant abnormalities such as increased or absent bowel sounds (citations omitted). Gastroenterology evaluation conducted at UC Davis Medical Center in March 2012 noted that multiple diagnostic studies were "negative for etiology." Examination was also normal. She was advised merely to take a fiber supplement, a probiotic, and an antidiarrheal such as Imodium (citations omitted). Thereafter, the claimant sought little, if any, workup or new treatment for gastrointestinal symptoms prior to attainment of age 50 and had no dietary restrictions, other than to stop smoking (citations omitted) and primary care clinic notes document few, if any, abdominal or pelvic complaints or related symptoms (citations omitted).

CAR 650-51.

Next, the ALJ addressed plaintiff's pain complaints:

> In terms of her pain complaints, imagery of the lumbar spine revealed severe lumbar disc disease at L5-S1 with bilateral pars defects and grade I listhesis (citations omitted). However, physical therapy note[s] documented that her "complaints do not match symptoms" (citations omitted). She underwent epidural injections at L5-S1 and the sacroiliac joints in October and November 2012 (citation omitted). Examinations of the spine revealed some limited motion but no pain with flexion of the hip against resistance and negative straight leg raises. Sensation, reflexes, and motor strength are generally intact (citations omitted). Although she presented with four-wheel walker at the consultative examination conducted in February 2014, examination revealed that her gain was neither ataxic nor antalgic. She was able to stand and walk on her heels and toes and Romberg test was normal. Range of motion of her spine, hips, and other joints was within normal limits and there were no neurological deficits (citation omitted). Although she complained of pain to her spine with even light fingertip pressure, examiner Susan Orillosa, MD noted that there was no pain response with distraction and there were other Waddell's signs. She was able to squat and hop. Straight leg raise tests were negative in both legs supine and seated and motor strength and reflexes were intact despite some reported decreased sensation to the "whole right side of her face, arms, leg, and body" and it was "the first time that she has noticed the right hemi-body sensory deficit." Dr. Orillosa noted that the sensory deficit "does not correlate with any other exam findings or findings on imaging" (citation omitted).
>
> The record demonstrates that the claimant was mainly seen for medication refills (citations omitted). Prior to attainment of age 50, she did not require surgeries, frequent changes in medications, ongoing specialty treatment or follow up, repeated injections, chiropractic adjustments, acupuncture, or use of a TENS unit to control her alleged pain. Social Security Ruling 16-3p states that had the claimant genuinely felt debilitating symptoms, it would have been more likely that she would have sought and maintained more aggressive treatment "such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources."

CAR 651.

Finally, the ALJ concluded plaintiff's subjective complaints and testimony are inconsistent with the medical opinion evidence, which the ALJ also discussed in detail.  See CAR 651-53.

Plaintiff argues that the ALJ did not provide clear and convincing reasons to discredit her testimony regarding the frequency of her bathroom breaks and her inability to schedule around her bathroom breaks.[3] According to plaintiff:

> . . .ALJ Buck's first reason "allegations are inconsistent with objective findings" fails the clear and convincing test because "objective findings" is nonspecific. AR 650. The ALJ did not find malingering, did not provide clear and convincing reasons for rejecting her testimony, and did not specify which statements made by Ms. Torres as to the severity of her diarrhea symptoms cannot be credited. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).
> ALJ Buck's second reason as to diarrhea "adequately controlled with treatment" fares no better for failing the clear and convincing test because Dr. Starkes authorized In Home Support (IHSS) for Ms. Torres since 2012. AR 235-242, 589, 650. Yet further, ALJ Buck failed to denote specific statements of Ms. Torres, supra, that were contradicted by any treating source of record. Considering the "adequately controlled" reason further developed by the ALJ's finding there were no reported symptoms of chronic diarrhea after March 2012, this also fails. AR 652.
> First, the record does not document no instances Ms. Torres needing to take bathroom breaks, suggesting that her bathroom break at the Hearing on 1/29/2014 as well as at the 4/17/2018 hearing. AR 90, 705. It is clear Ms. Torres continued to need unscheduled bathroom breaks granted by ALJ Buck well after March 2012. But further this reason also fails on specificity as Ms. Torres requested benefits from June 10, 2011 to August 13, 2014. AR 656. See also colonoscopy medical records for her diarrhea on March 3, 2014. AR 344.
> Here, the ALJ failed to cite exhibits of Ms. Torres' medications or other treatment for her diarrhea symptoms nor did the ALJ cite to findings that Ms. Torres' diarrhea symptoms were well-controlled by medication. Further, the record reveals that Plaintiff continued to request unscheduled bathroom breaks which ALJ Buck granted. In light of these medical records, substantial evidence does not support the ALJ's finding that Plaintiff's diarrhea symptoms were adequately controlled with treatment. *See Stansfield v. Colvin*, No. 12-10090, 2013 WL 6482780, at *6 (C.D. Cal. Dec. 10, 2013)("[T]he ALJ's finding that plaintiff's pain was adequately controlled with medication is not supported by substantial evidence and, thus, is not a clear and convincing reason for rejecting her subjective pain allegations."); *Garcia v. Astrue*, No. 12-00992, 2013 WL 1797029, at *14 (S.D. Cal. Mar. 13, 2013)("[W]hile there is evidence supporting a statement that medication temporarily helped [one of the impairments that the ALJ determined was severe], there is not substantial evidence supporting the ALJ's [ultimate] conclusion that [the claimant's] medication controlled her symptoms").

---

[3]  Plaintiff raises no argument concerning the ALJ's evaluation of her subjective pain complaints.

> Her "no significant findings" of chronic diarrhea belie the evidence of a colonoscopy procedure in March 2014. Thus, this reason is also neither clear nor convincing.

ECF No. 20, pgs. 12-13.

At the outset, the Court is unpersuaded that the "clear and convincing" standard applies in this case. The "clear and convincing" standard applies only when there is no evidence of malingering in the record. Here, the record contains evidence of malingering. Specifically, as the ALJ noted in her hearing decision, physical therapy notes reflect that plaintiff's "complaints do not match symptoms," and Dr. Orillosa noted that plaintiff's reported sensory deficit "does not correlate with any other exam findings or findings on imaging." CAR 651.

Plaintiff next argues that the ALJ's citation to inconsistency between the severity of complaints and objective findings is "nonspecific" because the ALJ "did not specify which statements made by Ms. Torres as to the severity of her diarrhea symptoms cannot be credited." ECF No. 20, pg. 12. This argument is unpersuasive. First, contrary to plaintiff's contention, the ALJ specified the portion of plaintiff's testimony found not credible – her complaints of totally disabling symptoms related to diarrhea. Second, the ALJ carefully detailed the objective findings undermining plaintiff's credibility in this regard, specifically normal abdominal imaging, stool studies, blood work, and examinations.

Finally, plaintiff contends the ALJ's finding that plaintiff's diarrhea symptoms were "adequately controlled with treatment" is unsupported. The Court disagrees. As the ALJ noted, although plaintiff complained of frequent diarrhea, after she was advised to take a fiber supplement, a probiotic, and an antidiarrheal medication, plaintiff reported few, if any, new complaints and sought little by way of further treatment. See CAR 650-51.

**B.   Evaluation of Lay Witness Evidence**

At Step 4, the ALJ assessed lay witness evidence while evaluating plaintiff's residual functional capacity. In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to

work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

As to testimony offered by third parties, the ALJ stated:

> Third party statements were provided by friends Clara Calloway (Ex. 9E), Veronica Velasquez, (Ex. 16E), and Manuel Jurado (Ex. 17E), Martha Santillan, the claimant's niece (Ex. 14E), the claimant's partner, Miguel Plasencia (Ex. 15E), Catheryn Hammons, the claimant's IHSS provider (Ex. 20E), and by the claimant's sons Adam and Miguel Plasencia (Ex. 18E, 19E). These statements are generally consistent with and supportive of claimant's allegations that she is primarily limited by pain and intestinal complaints with difficulty sitting, standing, walking, squatting, lifting, bending, kneeling, climbing stairs, and caring for herself.
>
> * * *
>
> . . . While there were a couple of occasions of abnormal clinical findings, the record does not reveal any significant signs that persisted throughout the relevant period. The weight of evidence shows that while she experienced some pain, diarrhea, and difficulty concentrating, they were controlled such that she could have performed a wide range of sedentary exertional work.
>
> Thus, the claimant's allegations, and the allegations of her third party, are not entirely supported prior to attainment of age 50.

CAR 650.

Plaintiff argues that the ALJ erred by failing to provide sufficient weight to Catheryn Hammons's statements regarding plaintiff's diarrhea. Plaintiff states:

> On January 27, 2014, Ms. Torres IHSS worker Ms. Hammons wrote "Kathy needs help just to go to the bathroom. Kathy has diarrhea a lot and needs help to clean up. Making it to the bathroom on time is hard for her. Especially with pain, it is hard for her to get up and get her pants off. Kathy has trouble eating a lot of foods because they go right through her and she will immediately need to go to the bathroom. It seems to be getting worse." AR 329.

///

11

> The ALJ found third party statements were provided by Catheryn Hammons, the claimant's IHSS provider (Ex. 20E) and statements were generally consistent with and supportive of the claimant's allegations that she is primarily limited by pain and intestinal complaints with difficulty caring for herself. AR 650. Such finding contradicts the ALJ's findings of Ms. Torres needing only one unscheduled break prior to August 2014. Indeed, ALJ Buck failed to discuss in any way Ms. Hammons statements. Thus, Ms. Hammons statements must be credited as true and Ms. Torres action be remanded for payment of benefits.

ECF No. 20, pg. 14.

Plaintiff's argument is unpersuasive. Plaintiff appears to contend that the ALJ's statement that Hammons's testimony was "consistent with and supportive of claimant's allegations" meant that the ALJ credited Hammons' testimony. See CAR 650. Plaintiff therefore argues that the ALJ should have given greater weight to Hammons' testimony in her analysis. The ALJ's claim that Ms. Hammons's statement was "consistent with and supportive of claimant's allegations" only suggests that Ms. Hammons's testimony aligned with plaintiff's testimony. See CAR 650. The statement did **not** conclusively determine that Ms. Hammons's statement was accurate and should be afforded great weight in the ALJ's determination.

The ALJ rejected plaintiff's statements, and those which supported them, because medical evidence directly contradicted the alleged severity of plaintiff's symptoms. See CAR 654. As discussed above, plaintiff's numerous evaluations, examinations, and medical tests only showed a minor gastrointestinal issue. See CAR 650-654. Plaintiff's failure to seek treatment following her 2012 appointment at UC Davis Medical Center supports the ALJ's conclusion that plaintiff's symptoms were adequately controlled. See CAR 653. Because plaintiff's statements and testimony were similar to the evidence offered by Ms. Hammons, the ALJ properly rejected Ms. Hammons' evidence for the same reasons cited for rejecting plaintiff's statements and testimony.

**C.    Residual Functional Capacity**

At Step 4, the ALJ determined plaintiff's residual functional capacity. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus,

residual functional capacity describes a person's exertional capabilities in light of his or her limitations.

As to plaintiff's residual functional capacity due to her irritable bowel syndrome, the ALJ stated that:

> Accordingly, the undersigned finds that her gastrointestinal complaints did not result in additional exertional or non-exertional limitations beyond those set forth by Dr. Thompson. The record does document weight loss due to chronic diarrhea, reports of having to use pads or diapers or to change clothes. There are no reports to medical providers that she had sudden bowel movements and there is no opinion evidence to support the need to use the restroom frequently during the day Ex. 1F-22F. Therefore, the longitudinal evidence supports a determination that she requires a restroom within 200 feet of her work area and 1 extra bathroom break lasting up to 5 minutes in addition to regular breaks with no other limitations due to her gastrointestinal complaints.

CAR 653.

Plaintiff argues that the ALJ failed to properly account for claimant's bathroom breaks in the residual functional capacity analysis. Plaintiff states:

> Her [plaintiff] testimony is also recorded by Dr. Starkes and others. She [plaintiff] stated she needed about 10 bathroom breaks a day. AR 117. She stated she would have frequent diarrhea. AR 102, 650. She stated she would need to take 12 bathroom breaks a day. AR 333, 385, 519.
> Despite this evidence and testimony, the ALJ failed to account for Claimant's potential need to take such frequent and unscheduled breaks in formulating the RFC or to further develop Claimant's testimony to number of unscheduled bathroom breaks needed……The VE testified that if an individual required unscheduled bathroom breaks at the frequency that Claimant testified to, employment would be precluded, as such circumstances would "exceed employer tolerances for routine rest and break periods." AR. The issue of the frequency, duration, and unscheduledness of Claimant's bathroom breaks, therefore, is highly relevant to the denial of benefits. See *Durr-Irving v. Colvin*, 600 Fed.Appx. 998, 1003 (7th Cir. 2015) (finding evidence of urinary incontinence "highly relevant" where a VE testified that a person who must use the restroom more than once an hour would be unable to perform the few jobs that met the ALJ's assessment of an applicant's RFC); *Seals v. Berryhill*, No. 16 CV 01975, 2017 WL 2416293, at *5 (S.D. Ind. June 5, 2017). See also *Manker v. Berryhill*, No. 16 C 10704, 2017 WL 6569719, at *3-4 (N.D.Ill. 2017).
> Given the importance of this issue in determining whether Claimant truly is able to perform any work in the national economy, the ALJ's failure to determine the frequency, duration, and unscheduledness of Claimant's required bathroom breaks and the practical workday limitations resulting therefrom is an error requiring remand. See, e.g., *Rasmussen v. Astrue*, No. 10 C 2344, 2011 WL 1807019, at *11 (N.D. Ill. May 6, 2011) (ALJ failed to determine the frequency or length of time the plaintiff would have to spend in the bathroom, and therefore failed to

> develop an RFC that was "expressed in terms of work-related functions"); *Sikorski v. Berryhill*, 690 Fed.Appx. 429, 433 (7th Cir. 2017) (remanding because the ALJ "made no finding regarding the required length of [the plaintiff's] bathroom breaks," and therefore the VE was not provided with a "complete picture" of the plaintiff's RFC); *Shewmake*, 2016 WL 6948380, at *11-12; *Spaulding v. Astrue*, 702 F. Supp. 2d 983, 995-996 (N.D. Ill. 2010).

ECF No. 20, pgs. 14-16.

Plaintiff's arguments are again unpersuasive. The ALJ addressed the issues arising from plaintiff's irritable bowel syndrome by allotting for unscheduled bathroom breaks and finding that plaintiff needed to be within 200 feet of a restroom. See CAR 653. Insofar as plaintiff alleges that the ALJ did not properly address the issues that plaintiff raised in her personal statement, that contention relates to plaintiff's credibility, which the Court finds the ALJ properly discounted. See CAR 650.

### D. **Vocational Findings**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

///

In cases where the Grids are not fully applicable, the ALJ may meet this burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ stated that:

> Prior to August 13, 2014, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations eroded the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as *Information Clerk* #237.367-046, sedentary, SVP 2, with approximately 49,000 positions nationally, *Junior Office Clerk*, #249.587-018, sedentary, SVP 2, with approximately 212,000 positions nationally, and *Interviewer* or *Charge Account Clerk* #205.367-014, sedentary, SVP 2, with approximately 33,000 positions nationally.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

15

> Based on the testimony of the vocational expert, the undersigned concludes that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to August 13, 2014, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule in the Medical-Vocational Guidelines.

CAR 655-56.

Plaintiff argues that the ALJ erred in finding available jobs for plaintiff because the ALJ's analysis was predicated on an erroneous residual functional capacity evaluation. Plaintiff also argues that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. Plaintiff states:

> As an initial matter, the Step 5 determination fails because (as discussed throughout) the RFC found by the ALJ does not include Ms. Torres' limitation of unscheduled breaks in excess of one per day. Where the hypothetical does not reflect all the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Embrey v. Brown*, 849 F.2d 418, 423 (9th Cir. 1988); *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir. 1984). Remand, accordingly, is required.
> ALJ Buck also erred by failing to ask the VE both the number of scheduled and unscheduled breaks allowed. AR … That is ALJ Buck failed to ask the VE if his statements conflicted with the DOT as to the number of scheduled breaks. AR 699-712. Because he failed to comply with SSR 00-4p, she erred. SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) (when an ALJ fails to ask a VE about conflicts with the DOT it may be harmless if there is no conflict or if the vocational evidence justifies the conflict.).
> The DOT descriptions at issue, however, do not substantiate the VE's assertion of compliance with the ALJ's hypothetical nor the inference that these jobs are categorized as sedentary based on Ms. Torres need for cane or walker, a restroom within 200 feet, and one extra bathroom break requirements. AR 655. Next, the ALJ failed to ask the VE if his statements conflicted with the DOT. Because he has failed to comply with SSR 00-4p; *Massachi v. Astrue*, 486 F. 3d 1149, 1154 n.19 (9th Cir. 2007) (when an ALJ fails to ask a VE about conflicts with the DOT it may be harmless if there is no conflict or if the vocational evidence justifies the conflict.).
>
> \* \* \*
>
> Here, the ALJ did not request that the vocational expert advise her as to any conflict with her testimony and the information in the DOT. AR 699-712. The ALJ has a duty to confirm that the vocational expert's testimony does not conflict with the information provided in the DOT. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (holding

>that, where the record does not reflect whether the vocational expert or ALJ even recognized a possible conflict between the ALJ's hypothetical and the DOT listing, the case should be remanded for further proceedings). Here, the ALJ states that "the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]," but, this is not the case.
>     The error is not harmless because the DOT for each of these jobs is silent on whether they can be done when using standard unknown breaks for each job. The ALJ denied Ms. Torres disability on a conclusion that the VE's jobs could be done with scheduled bathroom breaks normal to each job. Because it is unknown how many scheduled breaks are normal for each of the VE's jobs, remand for rehearing in the alternative is required.

ECF No. 20, pgs. 16-18.

Plaintiff's arguments are unpersuasive. Plaintiff correctly points out that the ALJ did not ask the vocational expert whether any of his statements conflicted with the Dictionary of Occupational Titles. See Social Security Ruling (SSR) 00-4p. The ALJ, however, was not required to. Plaintiff argues that the vocational expert's testimony did not align with the Dictionary of Occupational Titles for information about the frequency of bathroom breaks or the distance between plaintiff's workspace and the bathroom. See ECF No. 20, pg. 17. However, the Dictionary of Occupational Titles does not present any information on the frequency of bathroom breaks or the distance to the bathroom for these job titles. Because the Dictionary of Occupational Titles is silent on this issue, it cannot be said that the vocational expert's testimony was in conflict.  For this reason, the duty to inquire about conflicts was not triggered.

Insofar as plaintiff alleges that the vocational expert's testimony is invalid because it is predicated an inaccurate residual functional capacity, plaintiff is mistaken. As discussed above, the ALJ's conclusion regarding plaintiff's residual functional capacity was accurate. Notably, plaintiff does not challenge the ALJ's reliance on the medical expert's opinions. Therefore, the vocational expert's reliance on the ALJ's residual functional capacity determination was also sound.

///

///

///

///

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment, ECF No. 20, is denied;

        2.    Defendant's motion for summary judgment, (ECF No. 24, is granted;

        3.    The Commissioner's final decision is affirmed; and

        4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 25, 2020

                                                DENNIS M. COTA
                                                UNITED STATES MAGISTRATE JUDGE